UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DANNY W. SKLARSKI and JOHN D. CERETTO,

                Plaintiffs,

       v.                                                      DECISION AND ORDER
                                                                                     09-CV-633A

NIAGARA FALLS BRIDGE COMMISSION,
BOARD OF COMMISSIONERS OF THE
NIAGARA FALLS BRIDGE COMMISSION,
and NORMA I. HIGGS,

                Defendants.

---

## **INTRODUCTION**

Plaintiffs Danny W. Sklarski and John D. Ceretto brought an Article 78 proceeding in New York State Court seeking to compel defendants Niagara Falls Bridge Commission ("Commission") and its Chairperson, Norma I. Higgs, to respond to the plaintiffs' New York's Freedom of Information Law ("FOIL") request. In their petition, plaintiffs assert that the Commission was created by Joint Resolution of Congress in 1938, and that in 1991, Congress amended the Joint Resolution to "deem" the Commission "a public agency or public authority of the State of New York" for the purposes of federal law. Plaintiffs allege that, by virtue of the 1991 amendment, the Commission became a state agency or state

1

public authority subject to New York's FOIL.

The Commission defendants removed the action to federal court asserting federal question jurisdiction. They then moved to dismiss the complaint arguing that the Commission is not a state agency or state public authority and therefore is not subject to New York's FOIL. Plaintiffs opposed the motion to dismiss and filed a cross-motion for summary judgment. Oral argument on the motion to dismiss was held on January 13 and January 22, 2010. For the reasons stated, the defendants' motion to dismiss plaintiffs' FOIL claim is granted, plaintiffs' cross-motion for summary judgment is denied, and plaintiffs are granted leave to file an amended complaint within 60 days of this order.

## **BACKGROUND**

Following the 1938 collapse of the "Honeymoon Bridge" that spanned the Niagara gorge near Niagara Falls, both the State of New York and the federal government sought to enact legislation creating a Niagara Falls bridge authority. The New York State bill was introduced in the State Assembly and Senate in February 1938. The Assembly passed the bill, but the New York State Senate failed to act and as a result, the New York State Legislature never passed a bill enacting a Niagara Falls public bridge authority.

Several months later, in June 1938, members of Congress passed a joint resolution creating the Niagara Falls Bridge Commission See H.R. J. Res. 688,

75th Cong. 52 Stat. 767-71 (1938). Created under Congressional authority to regulate the instrumentalities of commerce, the Commission was authorized by Congress "to acquire, condemn, occupy, possess, and use such real estate and other property in the State of New York as may be needed for the . . . bridge . . . upon making just compensation therefore . . . ." Id. at § 2, 52 Stat. 767-68. Congress authorized the Commission to issue bonds and to fix and charge tolls for transit over the bridge, "deemed" any bridge constructed under the authority of the Joint Resolution to be "an instrumentality for international commerce authorized by the Government of the United States," id. at § 4, 52 Stat. 768, and directed that the Commission would consist of four members appointed by the Governor of New York, and four members appointed by the proper authorities of the Canadian government. Id. at § 7.

The Joint Resolution was modified over the years, with the last modification occurring in 1991 when Congress replaced the last sentence of § 6 with the following:

> The Commission shall be deemed for the purposes of all Federal law to be a public agency or public authority of the State of New York, notwithstanding any other provision of law.

See Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA"), Pub. L. No. 102-240, § 1070, 105 Stat. 1914, 2012(1991).

The Commission currently owns and operates three international bridges:

3

the Rainbow Bridge, the Whirlpool Bridge, and the Lewiston-Queenston Bridge. According to the defendants, the Commission receives no funding from New York State and supports all of its operations with tolls and other income derived from bridge operations.

## DISCUSSION

### A. Federal Question Jurisdiction

Before addressing the merits of the pending motions, the Court finds it necessary to address whether jurisdiction properly lies in this Court. During oral argument, the Court *sua sponte* questioned the propriety of federal jurisdiction and requested supplemental briefing on that issue. After reviewing the supplemental briefs and upon hearing argument on that matter, the Court is satisfied that the complaint raises a federal question.

Federal courts have original jurisdiction over "[a]ny civil action . . . founded on a claim or right arising under the Constitution, treaties or laws of the United States." See 28 U.S.C. § 1331. Whether a claim "arises under" federal law, and thus falls within federal question jurisdiction, is generally governed by the well-pleaded complaint rule. Rivet v. Regions Bank of La., 522 U.S. 470, 475 (1998). The well-pleaded complaint rule provides for federal jurisdiction only when the complaint affirmatively alleges a federal claim. Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Citigroup, Inc. v. Wachovia Corp., 613 F. Supp.2d

4

485, 489-90 (S.D.N.Y. 2009). A case "aris[es] under" federal law if "'a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 690 (2006) (quoting Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 27-28 (1983)).

Almost a century ago the Supreme Court explained that where the right to relief sought by the plaintiff depends on the construction or application of the Constitution or federal laws, the cause of action "arises under" the laws of the United States. See Smith v. Kansas City Title & Trust Co., 255 U.S. 180 (1921). The Court recently reiterated this point in Grable & Sons Metal Prods., Inc. v. Darue Eng'g Mfg., 545 U.S. 308 (2005), explaining that a case may "arise under" federal law, even though the plaintiff pleads a state law cause of action, where the pleaded cause of action "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Id. at 314. In Grable, the petitioner had brought a quiet title action in Michigan state court. However, five years before that suit, the IRS had seized the petitioner's property to satisfy federal tax delinquencies, had served notice of the seizure on the petitioner by certified mail, and then sold the property to respondent. Petitioner's suit against respondent claimed that petitioner had

5

retained title because 26 U.S.C. § 6335, the statute that governed service of the seizure notice, required personal service, not service by certified mail. Respondent removed the case to federal court, and petitioner challenged removal for lack of subject matter jurisdiction. The Supreme Court held that federal jurisdiction existed because "[w]hether Grable was given notice within the meaning of the federal statute is . . . an essential element of its quiet title claim . . . ." Id. at 314-15. The Court explained:

> the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case. The meaning of the federal tax provision is an important issue of federal law that sensibly belongs in a federal court.

Id. at 315.

Application of the Grable analysis leads to the conclusion that plaintiff's state law FOIL claim raises a federal question. As in Grable, the meaning of the federal statute - the Joint Resolution - is actually in dispute and is the only key issue in dispute here. Both parties agree that if the Commission is not a state entity, FOIL does not apply. Thus, the dispute turns on whether the 1991 amendment to the Joint Resolution transformed the Commission into a state public authority, as plaintiffs contend. Plaintiffs' state law claim cannot be adjudicated without interpreting the Joint Resolution, and indeed, that interpretation is the central issue in this case. Accordingly, the Court finds that plaintiffs' claim necessarily arises under federal law. See Mitskovski v. Buffalo

and Fort Erie Public Bridge Authority, 435 F.3d 127, 135 (2d Cir. 2006) (finding that plaintiff's claim that a Bridge Authority was subject to New York's FOIL raised a federal question because it required interpretation of an international compact).

B.  **Is the Commission a State Agency?**

The Court will now turn to the merits of the defendants' claim that the Commission is not a state agency or state public authority.

Upon a motion to dismiss, the Court must determine whether the complaint contains sufficient factual matter which, accepted as true, states a claim to relief that is "plausible on its face." See Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

As the defendants correctly note, the Commission was created by an act of Congress, not by the New York State Legislature. Indeed, before Congress created the Commission, bills were introduced in the New York State Assembly and Senate seeking to create a "Niagara Falls public bridge authority," but the New York State Legislature failed to adopt that legislation. Instead, it was the federal government who chose to act in June 1938, passing the Joint Resolution that created the Niagara Falls Bridge Commission. See H.R. J. Res. 688, 75th Cong. 52 Stat. 767-71 (1938).

As stated above, Congress amended the Joint Resolution in 1991, inserting the following language as the last sentence in § 6:

> The Commission shall be deemed for the purposes of all Federal law to be a public agency or public authority of the State of New York, notwithstanding any other provision of law.

See Intermodal Surface Transportation Efficiency Act of 1991 ("ISTEA"), Pub. L. No. 102-240, § 1070, 105 Stat. 1914, 2012(1991). Plaintiffs rely on this language as evidence that the Commission is a state entity.

The 1991 amendment did not, as plaintiffs argue, transform the Niagara Falls Bridge Commission into a state agency or state public authority. Nor could it. While the federal government has many powers, it remains a government of limited jurisdiction. There is simply no support for the plaintiffs' assertion that, among the federal government's many powers lies the authority to create state entities. Principles of federalism and comity clearly prohibit such an action.

Nor would such an action be valid under the Supremacy Clause of the United States Constitution, Art. VI, cl. 2, as plaintiffs suggest. The Supremacy Clause provides that the laws of the United States "shall be the supreme Law of the Land; . . . any Thing in the Constitution or Laws of any state to the Contrary notwithstanding." Under this command, state laws that conflict with federal law are deemed "without effect." See Altria Group., Inc. v. Good, 129 S. Ct. 538 (2008); Maryland v. Louisiana, 451 U.S. 725, 746 (1981).

Here, however, there is no conflict with state law. New York State had the opportunity to enact legislation creating a state bridge commission in Niagara Falls, but declined to do so. The Supremacy Clause does not authorize the federal government to create a state entity on the state's behalf when the state itself has declined to do so.[1]

Rather, it is clear that the language relied on by the plaintiffs simply reflects Congress' intent that the Commission be treated as a state public authority "*for the purposes of federal law*."[2] The Joint Resolution is silent as to how the Commission should be treated *under state law,* and more specifically, whether the Commission would be subject to state freedom of information laws. Because the Joint Resolution did not transform the Commission into a state public authority or require that the Commission be subject to state laws governing disclosure of information, the motion to dismiss plaintiffs' FOIL claim must be granted.

This conclusion is compelled by applicable law, notwithstanding that the interests of the public would be best served in an atmosphere of full disclosure. "Transparency in government, no less than transparency in choosing our government, remains a vital national interest in a democracy." Nat'l Ass'n of Mfrs.

---

[1] The fact that the New York State legislature acted to create other bridge authorities under state law (i.e., the Thousand Islands Bridge Authority and the Ogdensburg Bridge Authority), but failed to do so for with regard to the Niagara Falls Bridge Commission, bolsters the conclusion that New York did not intend for the Commission to be a state entity.

[2] Indeed, it appears that statement is specifically intended to address how the Commission should be treated for the purposes of *federal tax laws*.

9

v. Taylor, 582 F.3d 1, 14 (D.C. Cir. 2009). The "openness in government has always been thought crucial to ensuring that the people remain in control of their government." In re Sealed Case, 121 F.3d at 729, 749 (D.C. Cir. 1997). In fact, in passing the freedom of information act laws, "Congress recognized that the public cannot make intelligent decisions without [adequate] information, and that governmental institutions become unresponsive to public needs if knowledge of their activities is denied to the people and their representatives." Soucie v. David, 448 F.2d 1067, 1080 (D.C. Cir. 1971).

Nevertheless, the action here is brought under New York's FOIL, not federal freedom of information laws. Because the Commission is not a state entity, and because FOIL applies only to state entities, plaintiffs' FOIL action must be dismissed.

### B.  Cross Motion for Summary Judgment

In response to the motion to dismiss, plaintiffs filed a cross motion for summary judgment in their favor, arguing that, if the Court finds that the Commission is not a state entity, disclosure is warranted under federal law. First, they argue that the language of the Joint Resolution itself provides for such disclosure. Second, they argue that disclosure of the information sought in the petition is warranted under the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552.

Whether the Joint Resolution or FOIA would require disclosure of the requested information is not an issue that is properly before this Court. The only cause of action raised in plaintiffs' Article 78 petition is an action to comply with New York's FOIL, which the Court has found is subject to dismissal. The federal claims that plaintiffs now seek to raise cannot be adjudicated unless the complaint is amended to include those claims.

During oral argument on this matter, plaintiffs expressed their desire to amend the complaint to include federal causes of action if their FOIL claim was dismissed. Rather than dismissing this action in its entirety, the Court will allow plaintiffs an opportunity file an amended complaint. Justice requires providing the plaintiffs with an opportunity to raise their federal claims, see Fed. R. Civ. P. 15(a)(2) (providing that leave to amend a compliant shall be freely given when justice so requires), particularly where, as here, the relief sought is simply disclosure of information concerning the operation of a public entity,[3] and where Congressional policy favors disclosure over secrecy. See Rose v. Dep't of Air Force, 495 F.2d 261, 263 (1974) (observing that the overall goal of FOIA was to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.").

---

[3] Whether the Commission is a federal agency that is subject to FOIA remains to be seen. However, there can be no doubt that the Commission is a public authority of some sort performing a public function and vested with sovereign powers of eminent domain.

## CONCLUSION

For the reasons stated, defendants' motion to dismiss plaintiffs' FOIL claim is granted, plaintiffs' cross-motion for summary judgment is denied, and plaintiffs are granted leave to amend the complaint within 60 days of this order.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED: March 26, 2010